# The State *v.* Seawell.

*Information Impeaching Justice of the Peace.* ·

64  225
111  484

1. *Impeachment of justice of the peace; nature and requisites of proceeding.*— The constitutional provision in reference to the impeachment of justices of the peace and other officers named in the 3d section of the 7th article, and the statute approved January 23d, 1879, "to provide for the impeachment and removal from office" of those officers (Sess. Acts 1878–9, p. 155), create a new jurisdiction, and provide the manner of its exercise; and if that mode is not followed, the proceeding can not be sustained.

2. *Same; when founded on report of grand jury, and sufficiency of report.*—When the proceeding is instituted by the solicitor on the recommendation and report of the grand jury, the statute requires that the report shall set forth the facts; and although it may not be necessary to set forth the misconduct complained of with that degree of accuracy usually required in pleading, a succinct statement of the facts, showing the nature and description of the acts of official malservation charged, is required, as a guide to the solicitor, and a protection to the accused.

3. *Same; same.*—A report in these words: "We regret that it is our duty to state, that our investigations have developed that" A. and B., justices of the peace, "have, in a large number of cases, been guilty of the crimes of extortion and misconduct in office. The reports of those officers, certified by themselves, respectively show that they are in the habit of compromising the most serious criminal cases, on the payment of costs by the accused. Indeed, this seems to be the settled practice in their courts. We refer to the reports of said officers, in confirmation of this; and, on account of said offenses, we recommend that said officers be impeached, for corruption in office, and extortion committed by each of them under color of office,"—held too vague and indefinite to support an impeachment.

(15)

[The State v. Seawell.]

4. *Mistake in title of impeachment statute.*—The title of said impeachment statute of January 23, 1879, as printed in the Session Acts, pp 155–59, limits the provisions of the statute to the officers named in the 3d section of the 7th article of the constitution, while the body of the statute also applies to the officers named in the 2d section; but a reference to the enrolled bill, on file in the office of the secretary of state, shows that there is a mistake in the title as printed, and that both classes of officers are mentioned in the title of the law.

Appeal from the City Court of Montgomery.

Tried before the Hon. John A. Minnis.

This proceeding was commenced at the October term of said court, 1879, when the solicitor of the circuit filed in the court an information in these words: "The undersigned, solicitor of the second judicial circuit, as in duty bound, and predicating his action upon the report of the grand jury sworn and impanneled for said term of said court; which report, as it appears of record, is referred to, and made a part of this information, so far as the same relates to the subject-matter hereof; now gives this honorable court to understand and be informed that, heretofore, to-wit, on the 7th day of August, A. D. 1876, one William Seawell was duly elected to the office of a justice of the peace of beat number ——; of said county of Montgomery; that he took the oath, and executed the bond required by law, and entered upon the discharge of the duties of said office, and has, since that time, exercised the authority and duties of such office, and enjoyed the emoluments, and still continues to do so. And the undersigned, solicitor as aforesaid, further gives the court to understand and be informed that the said William Seawell, after his said election to said office, and while in the exercise of its duties and authority, to-wit, at divers times during the year 1879, and prior to the 13th day of October of said year, unmindful of the obligations of his said oath, in violation of the laws, and against the peace and dignity of the State of Alabama, knowingly and corruptly extorted money, by the powers, and under the color of his said office, from numerous citizens of the State, brought before him under various criminal charges; which said covinous and corrupt practices are more particularly set forth and charged as follows: 1. That he issued a warrant against one Scip. Walker, for the offense of carrying a pistol concealed about his person, caused him to be arrested and brought before him (said Seawell) on said charge, and unlawfully and corruptly compromised or compounded said alleged crime, and discharged said Walker, in consideration of the payment by said Walker, or by some other person for him, of the costs of the proceeding, to-wit, the sum of $2.50, which said sum was accordingly paid to, and unlawfully received by him, the said Sea-

well, as aforesaid." Numerous other specifications, twenty-two in all, are made ; and the information then concludes : "And the undersigned, solicitor as aforesaid, gives the court to understand and be informed, that each and every of the offenses above set forth and specified was committed by the said William Seawell, in the county aforesaid, during the term for which he was elected, and done under the color of his office of justice of the peace. Wherefore, the undersigned charges him, the said William Seawell, with corruption in office, and doth to this honorable court impeach him of high crimes and misdemeanors committed while in office, and under color thereof," &c.

The report of the grand jury, referred to in the information, it is not necessary to set out, since the material portions of it are copied in the opinion of the court. The defendant's report to the grand jury of the cases tried before him, which is mentioned in their report to the court, contains the following entry in the case of Scip. Walker, mentioned in the information : " *State v. Scip. Walker.* Charge, carrying a concealed pistol; costs—affidavit and warrant, $1.50 ; constable, executing warrant, $1.00—total, $2.50. Compromised, and costs paid." Of the other cases specified in the information, the following are the entries in the justice's report of the cases named : " *State v. Peter Smith.* Charge, larceny ; costs," affidavit, warrant, &c., $2.50 ; " compromised, and costs paid." " *State v. Francis Manning.* Charge, assault and battery ; costs," amounting to $2.75 ; " compromised, and costs paid." " *State v. John Cox.* Charge, defamation ; costs," amounting to $7.00 ; " compromised, and costs paid." "*State v. Kate Bryant.* Charge, using vulgar language ; costs," amounting to $6.00 ; " compromised, and costs paid." The other cases specified contain similar entries.

The defendant moved to quash and dismiss the information—1st. " because there is no law authorizing his impeachment ;" 2d, " because the act of the General Assembly, providing for the impeachment of justices of the peace, does not fully secure to the defendants the right of appeal;" 3d, " because the information does not show that the grand jury reported to the court the facts upon which said information was based ;" 4th, " because the report of the grand jury, upon which the information is based, does not set forth the facts upon which the information to impeach this defendant is recommended ;" 5th, " because the information does not charge that the defendant has been guilty of an impeachable offense." The court sustained the motion, quashed the information, and discharged the defendant ; and its judgment is now assigned as error.

H. C. TOMPKINS, Attorney-General, and F. S. FERGUSON, for appellant.

JNO. W. A. SANFORD, and J. N. ARRINGTON, *contra.*

STONE, J.—The present is an impeachment proceeding, instituted against the appellee as a justice of the peace, under the act "To provide for the impeachment and removal from office of the officers mentioned in section 3, of article 7, of the constitution of Alabama."—Pamph. Acts 1878–9, page 155. The causes of impeachment are specified in article 7, section 1, of the constitution of 1875. They are "willful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude while in office, or committed under color thereof, or connected therewith." Section 3 : "The sheriffs, clerks of the Circuit, City or Criminal Courts, tax-collectors, tax-assessors, county treasurers, coroners, justices of the peace, notaries public, constables, and all other county officers, mayors and intendants of incorporated cities and towns in this State, may be removed from office for any of the causes specified in section one of this article, by the Circuit, City, or Criminal Court, of the county in which such officers hold their office, under such regulations as may be prescribed by law."

In the act mentioned above, section 22, it is made "the duty of the solicitor of the circuit to institute proceedings under this act, and prosecute the same against any officer included in section 3, article 7 of the constitution, when the Circuit, City, or Criminal Court of the county shall so order, or whenever it appears from the report of the grand jury of the county that any such officer ought to be removed from office, for any cause mentioned in section one of this act." Section 21 of the act provides, that when the grand jury, on "investigation and inquiry, * * find that such officer, for any cause mentioned in this act, ought to be removed from office," they "shall so report to the court, setting forth the facts."

We have copied every constitutional and statutory provision, necessary to a proper understanding of this case. It will be seen, that cases of impeachment which originate and are tried in the Circuit, City, or Criminal Court, are directed to be prosecuted by the solicitor of the circuit, when the court shall so order, or when the grand jury shall so present and direct. Without one of these sanctions and authorizations, the solicitor has no authority to institute such proceedings. The constitution and statute create a jurisdiction which, theretofore, had no existence, and provide the man-

ner of its exercise. That mode or manner of exercising the jurisdiction must be followed, or it has no sanction in the law.

The report of the grand jury, on which the present proceedings are sought to be upheld, is in the following language: "We regret that it is our duty to state, that our investigations have developed that William Seawell, a justice of the peace, and" —— "N.P. and *ex officio* J. P., have, in a large number of cases, been guilty of the crimes of extortion and misconduct in office. The reports of these officers, certified by themselves, respectively show that they are in the habit of compromising the most serious criminal cases, on the payment of costs by the accused parties. Indeed, this seems to be [the] settled practice in their courts. We refer to the reports of said officers, in confirmation of this; and on account of said offenses, we recommend that said officers be impeached for corruption in office, and extortion committed by each of them under color of office. We recommend that the solicitor be directed to take necessary legal steps to that end." It will be observed that, while the grand jury "refer to the reports of said officers in confirmation" of their recommendation, they do not make them a part of their report. But, suppose they did. The report of the appellee shows fifty State cases brought before him. Twenty-two of these cases are marked "compromised, and costs paid;" of which one is for larceny, one for adultery and fornication, and one for killing a pig. The other nineteen are for small misdemeanors. Charges of larceny and adultery are certainly grave offenses. There is no authority in law to compromise State prosecutions. Still, when the offense involves no moral turpitude, sometimes an amicable adjustment of the difficulty is more consonant with the public weal, than the imposition of a money fine. In such cases, it is not infrequently the case, that courts of the highest character and largest original jurisdiction permit them to pass off on a nominal fine. There is one case, where robbery was the charge, in which the entry is, "Prosecutor withdraws the charge. and is to pay costs." This might have occurred without fault in the justice; for a prosecutor might conscientiously sue out a warrant of arrest, and become convinced afterwards that the accused was innocent. The remaining twenty-seven cases reported present no marks of official impropriety, or of suspicion. and we need not comment on them. Now, to which of these cases did the grand jury, in their report, refer? and how can it be known that the solicitor of the circuit, in framing articles of impeachment, embodied therein the particular official acts of the justice which

the grand jury had, by their report, denounced as extortion, misconduct in office, and corruption in office, for which they recommended his impeachment? This was not a setting forth of the facts, which the statute requires. We will not say the report must set forth the misconduct complained of, with that degree of accuracy usually required in pleading; but a succinct statement of the *facts*—the nature and description of the acts of official malversation charged—must be shown, alike as a guide to the solicitor, and a protection to the accused. The report is too vague and indefinite to uphold the proceedings.

The judgment of the City Court is affirmed.

In the printed copy of the impeachment statute (Pamphlet Acts 1878-9, page 155), the caption, or title, expresses only officers mentioned in section 3, article 7 of the constitution, omitting the higher officers mentioned in section 2. This, if a correct copy, would present a serious constitutional question, as the act makes provision for the impeachment of all the officers mentioned in the two sections. We have examined the enrolled bill, however, as it passed the two houses, and received the approval of the Governor; and we find its title covers "officers mentioned in sections 2 and 3 of article 7 of the constitution of Alabama."