[No. 2317]

SAM GAY, PETITIONER, *v.* THE DISTRICT COURT OF THE TENTH JUDICIAL DISTRICT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND CHARLES LEE HORSEY, JUDGE OF SAID COURT, RESPONDENTS.

[171 Pac. 156]

1. COUNTIES—OFFICERS—REMOVAL—JURISDICTION OF DISTRICT COURT.
   Whether or not Const. art. 6, sec. 6, gives the district court jurisdiction of proceedings for removal of county officers, article 7, section 4, gives the legislature plenary power to provide procedure therefor, and therefore Stats. 1908–09, c. 200, secs. 21, 22 (Rev. Laws, 2851, 2852), giving such jurisdiction, is constitutional.

2. CONSTITUTIONAL LAW—DELEGATION OF POWER TO JUDICIARY.
   Const. art. 3, sec. 1, providing that none of the three departments of government shall exercise functions belonging to the others except where expressly directed, makes it plain that the district court could be delegated powers other than those expressly mentioned by article 6, section 6.

3. CONSTITUTIONAL LAW—OFFICERS—REMOVAL—JURY TRIAL.
   Stats. 1908–09, c. 200, secs. 21, 22 (Rev. Laws, 2851, 2852), providing for summary trial in cases of removal of officers, does not violate the constitutional provision that one charged with crime is entitled to a jury trial, because the legislature has plenary power in such cases.

4. OFFICERS—REMOVAL—TITLE OF ACTION.
   A proceeding for removal of a county officer need not be brought in the name of the state, under Stats. 1908-09, c. 200, secs. 21, 22 (Rev. Laws, 2851, 2852), giving procedure for removal of officers.

5. CONSTITUTIONAL LAW—CONSTITUTIONALITY OF STATUTE—WHO MAY CHALLENGE.
   Where the requirement under Stats. 1908–09, c. 200, secs. 21, 22 (Rev. Laws, 2851, 2852), providing for removal of officers, that officer removed shall pay complainant $500, is waived, the constitutionality of such requirement cannot be considered.

6. STATUTES—TITLE AND SUBJECT—REMOVAL OF OFFICERS.
   The title to Stats. 1908–09, c. 200, relates to only the one subject of removal of officers, although it provides several independent methods for removing them.

ORIGINAL PROCEEDING in *certiorari* by Sam Gay to inquire into the jurisdiction of the District Court of the Tenth Judicial District of the State of Nevada, in and for the County of Clark, and Charles Lee Horsey, Judge of said Court. **Dismissed.**

*Richard Busteed, Thomas & Ham,* and *Charles E. Barrett,* for Petitioner:

The supreme court has power to issue a writ of *certiorari.* (Const. Nev., art. 6, sec. 4.) The legislature cannot take away or limit the right and power of the court to issue the writ. (*State* v. *Johnson,* 103 Wis. 591.) *Certiorari* lies in all cases unless taken away by the express words of the statute. (*New Jersey R. R. & T. Co.,* v. *Snydham,* 17 N. J. Law, 25; *Kingsland* v. *Gould,* 6 N. J. Law, 161.)

It is the rule that the writ of *certiorari* will lie in all cases where no adequate remedy exists by which an erroneous determination can be reviewed or excess of judicial jurisdiction restricted. (*Independent Pub. Co.* v. *American Press,* 102 Ala. 495; *Territory* v. *Zoan,* 60 Pac. 893; *Lyon* v. *Green,* 68 Ark. 205; *Warren* v. *Oliver,* 111 Ga. 807; *Don* v. *True,* 19 Me. 46; *Spener* v. *Bloom,* 149 Pa. St. 106; *Ex Parte Boynton,* 44 Ala. 261.)

The right of appeal, while held an adequate means of correcting mere errors committed in the exercise of jurisdiction, may prove inadequate to redress or prevent a wrong done in the absence or excess of jurisdiction. (2 Spelling, Ext. Rel., secs. 1918, 1963; *Memphis* v. *Brannon,* 96 Ala. 461; *State* v. *Ashland,* 71 Wis. 502.) In this regard, *certiorari* accomplishes in effect the same functions as a court of equity, because the remedy at law is neither adequate, certain or complete. (*State* v. *Dobson,* 135 Mo. 19.) *Certiorari* is a summary and more effective remedy for judicial excess than writ of error or appeal. (2 Spelling, Ext. Rel., sec. 1890.) The inadequacy, and not the absence of all other legal remedies, and the danger of a failure of jurisdiction without it, must usually determine the propriety of the writ. (*People* v. *State Treasurer,* 24 Mich. 477; *Cushing* v. *Gay,* 23 Me. 9; *Hopkins* v. *Folger,* 60 Me. 266; *Knapp* v. *Kellar,* 32 Wis. 468.)

An adequate remedy is a remedy which is equally beneficial, speedy, and sufficient; not merely which at some time in the future will bring about a reversal of the judgment of the lower court, but one that will promptly

relieve the petitioner from the injurious effects of that judgment and the acts of the inferior court. (*People* v. *Public Park Commission,* 66 How. Pr. 293; *Keplinger* v. *Woolsey,* 93 N. W. 1008.)

The proceedings in the district court are absolutely void. Section 6, article 7, Constitution of Nevada, provides the jurisdiction and powers of the district court, and there is no provision granting power to the district court to hear or determine an action of the kind and character at bar. There is no allegation in the complaint which brings the case within any other provision of the constitution.

The act of the legislature upon which the prosecution is based is void because more than one subject is embraced in the act; because one part of the act covers matters coming within the penal code and another part indicates that the action should be in the nature of a civil proceeding; because that part of the act giving the right to any person to institute a proceeding against a public officer violates the state constitution, which provides that action of a criminal nature must be in the name and by the authority of the state; because the act provides a penalty which is to go to the informer, and no mention of this penalty, or of the informer, appears in the title of the act; and for the reason that the section of the act which attempts to create a liability against a public officer in favor of an individual, takes away from the public officer the right of trial by jury, and undertakes to deprive him of his property and give it to an individual without compensation.

"The title of an act cannot be increased by construction when too narrow to cover all of the provisions of the enacting part, nor can its purview be contracted by construction to fit the title." (Sutherland, Stat. Const., sec. 87; *Fort Worth Ry. Co.* v. *Loyd,* 132 S. W. 899; *State* v. *Hallock,* 19 Nev. 384: *State* v. *Silver,* 9 Nev. 229; *Bell* v. *District Court,* 28 Nev. 280; *Johnson* v. *Grady Co.,* 150 Pac. 497; *Ex Parte Brown,* 81 Pac. 554; *Wabash Ry. Co.* v.

*Young,* 69 N. E. 1003; *State* v. *Holliday & O'Leary,* 115 Pac. 205.)

*Geo. B. Thatcher,* Attorney-General; *E. T. Patrick,* Deputy Attorney-General; *A. S. Henderson,* District Attorney, and *F. A. Stevens,* Deputy District Attorney, for Respondents:

*Certiorari* will not lie, because petitioner has the right of appeal from the decree complained of. The proceedings under sections 2851 to 2854, inclusive, Revised Laws 1912, are civil proceedings, and an appeal therein is provided for in section 4, article 6, Constitution of Nevada, defining the appellate jurisdiction of the supreme court. This appellate jurisdiction is also defined in chapter 46 of the civil practice act, and in acts amendatory thereof and supplemental thereto. The great weight of authority and the better reasoned cases hold that proceedings to remove from office a public official are in their nature civil. (*Skeen* v. *Craig,* 31 Utah, 20; *Skeen* v. *Paine,* 90 Pac. 440; *Rankin* v. *Jauman,* 4 Idaho, 53; *Ponting* v. *Isaman,* 7 Idaho, 283; *Fuller* v. *Ellis,* 98 Mich. 96; *Clay* v. *Stuart,* 74 Mich. 411; *Attorney-General* v. *Jochim,* 99 Mich. 358; *Moore* v. *Strickling,* 46 W. Va. 513.)

The object of the statute is to protect the public from corrupt officials, not to punish the offender. (*Ponting* v. *Isaman, supra; Rankin* v. *Jauman, supra; Skeen* v. *Craig, supra.*) The proceedings are not in the nature of criminal punishment, for they must be instituted while the accused is still in office. (*In Re Stow,* 98 Cal. 587; *Smith* v. *Ling,* 68 Cal. 324; *Woods* v. *Varnum,* 85 Cal. 639; *Thurston* v. *Clark,* 107 Cal. 285; *Skeen* v. *Craig,* 31 Utah, 20.) A removal from office for the commission of a crime does not bar a subsequent prosecution for a crime. (*People* v. *Meakim,* 133 N. Y. 214.)

Where the lower court proceeds to try a case upon the theory that a statute which is involved in the action is valid when it is not, a judgment rendered in the case may be void, but the right of appeal would still apply. (*Chapman* v. *Justice Court,* 29 Nev. 158; *Hastings* v.

*Burning Moscow Co.*, 2 Nev. 97; *Jumbo Mining Co.* v. *District Court*, 28 Nev. 253; *Ex Parte Rosenblatt*, 19 Nev. 440.)

*Certiorari* will not lie to inquire into the constitutionality of the act upon which the proceedings in the lower court were based. (*McConnell* v. *Board*, 83 Pac. 494; *State* v. *Osburn*, 24 Nev. 187.)

Petitioner was not deprived of any constitutional right in having a trial before the court instead of before a jury, the statute providing for a trial before the court being valid and constitutional. (Rev. Laws, 2852; *State ex rel. Payne* v. *District Court*, 165 Pac. 294; *Rankin* v. *Jauman*, 36 Pac. 502; *Woods* v. *Varnum*, 24 Pac. 843; *Moore* v. *Strickling*, 50 L. R. A. 279.)

The power to remove an unfaithful or negligent public official is not essentially a judicial power. Under constitutional provisions similar to section 4, article 7, Constitution of Nevada, the power conferred upon the legislature has been held to be plenary. (*State* v. *Peterson*, 52 N. W. 655; *State ex rel. Payne* v. *District Court*, 165 Pac. 294; *Clay* v. *Stuart*, 74 Mich. 411; *State* v. *Grant*, 81 Pac. 795; *State ex rel. Kirby* v. *Henderson*, 124 N. W. 767.)

Proceedings for the summary removal of officers need not be in the form of criminal actions, nor brought in the name of the state. (*Woods* v. *Varnum*, 85 Cal. 639; *State ex rel. Payne* v. *District Court*, 165 Pac. 294.) Even where the proceeding is considered to be criminal, it is held to be one not prosecuted by indictment or information. (*In Re Curtis*, 108 Cal. 661; *Wheeler* v. *Donnell*, 110 Cal. 655; *People* v. *McKamy*, 168 Cal. 531.) The petition and the return show that petitioner waived any defect of process, if any existed, and no objection was made in the lower court as to any defect in the citation. Therefore, the question as to whether the proceedings should have been brought in the name of the state need not be considered. (12 Cyc. 203; *Golden* v. *District Court*, 31 Nev. 250.)

The provision in the body of the act for a judgment of $500 in favor of the informer does not make the act broader than its title. The subject of the act is the

removal of an unfaithful officer, and a judgment of $500 is merely incidental thereto. (Rev. Laws, 2851-2854; *Smith* v. *Ling*, 9 Pac. 171; *Wheeler* v. *Donnell*, 110 Cal. 655, 43 Pac. 1; *State* v. *Power*, 88 N. W. 769.)

*McNamara & Van Fleet, Amici Curiæ.*

By the Court, COLEMAN, J.:

This is an original proceeding in *certiorari* to inquire into the jurisdiction of the Tenth judicial district court of the State of Nevada to enter a judgment removing the petitioner, Sam Gay, as sheriff of Clark County, Nevada, from office.

A complaint was filed in the district court of said county, wherein it was alleged that the defendant, Sam Gay, as sheriff, was guilty of nonfeasance in office, in that he neglected and refused to arrest one Joe Keate, his deputy, while the latter was making an assault with a pistol upon W. H. Harkins, a justice of the peace, in the presence of the defendant. Upon the filing of the complaint citation was issued and served upon the defendant. Defendant did not demur to the complaint, or in any way question the jurisdiction of the court, but filed an answer denying certain of the allegations of the complaint. The matter was heard upon the issue thus raised, and the court found the allegations of the complaint to be true and entered judgment removing the defendant from office.

The constitution of Nevada, as do the constitutions of the various states, divides the powers of the state into three branches, and provides that the judicial power of the state shall be vested in a supreme court, district courts, and in justices of the peace, and authorizes the legislature to establish municipal courts. Section 6, art. 6, of the constitution, provides that the district courts shall have jurisdiction in certain cases, but does not say that they shall have jurisdiction in proceedings for the removal of any public officer; hence council for petitioner contend that the district court had no jurisdiction to hear and determine the charges filed with said court

and to make the order for the removal of the petitioner from office.

1. Without determining as to the scope and effect of section 6, article 6, of the constitution, but conceding for the sake of this matter that the district court acquired no jurisdiction under the section of the constitution mentioned, we are nevertheless of the opinion that the court had jurisdiction to hear and determine the matter presented in the complaint filed in the district court charging the petitioner with nonfeasance in office. From time immemorial society has found it necessary to make some provision for the removal of venal, corrupt, faithless, and negligent public officers. The importance of this was realized when the constitution of the United States was drafted, and this policy has been carried into the constitution of every state in the union. The impeachment of all of the state and judicial officers of Nevada, except justices of the peace, is provided for in article 7 of the constitution; and while no procedure is prescribed in the constitution for the removal of other officials, section 4 of article 7 reads:

"Provision shall be made by law for the removal from office of any civil officer other than those in this article previously specified, for malfeasance, or nonfeasance in the performance of his duty."

It was pursuant to this provision of the constitution that the legislature passed "An act providing for the removal from office of public officers for malfeasance or nonfeasance in office, regulating the mode of procedure, and other matters properly connected therewith." (Stats. 1909, p. 293; Rev. Laws, 2851, 2852.)

Sections 21 and 22 of the act read:

"SEC. 21. If any person now holding or who shall hereafter hold any office in this state, who shall refuse or neglect to perform any official act in the manner and form as now prescribed by law, or who shall be guilty of any malpractice or malfeasance in office may also be removed therefrom as hereinafter prescribed.

"SEC. 22. Whenever any complaint in writing duly

verified by the oath of any complainant, shall be
presented to the district court, alleging that any officer
within the jurisdiction of said court has been guilty of
charging and collecting any illegal fees for services ren-
dered or to be rendered in his office, or has refused or
neglected to perform the official duties pertaining to his
office as prescribed by law, or has been guilty of any
malpractice or malfeasance in office, it shall be the duty
of the court to cite the party charged to appear before
him on a certain day, not more than ten nor less than
five days from the time when said complaint shall be
presented, and on that day, or some subsequent day not
more than twenty days from that on which said com-
plaint is presented, shall proceed to hear, in a summary
manner, the complaint and evidence offered by the party
complained of, and if, on such hearing, it shall appear
that the charge or. charges of said complaint are sus-
tained, the court shall enter a decree that said party
complained of shall be deprived of his office, and shall
enter a judgment for five hundred dollars in favor of the
complainant and such costs as are allowed in civil cases."

. The constitutional convention, in adopting section 4
of article 7 of the constitution, realized, no doubt, that
to confer upon legislative bodies the duty of impeaching,
trying, and removing district, county, township, and
municipal officers would be to place an undue burden
upon the legislature, and furthermore might, in some
instances, unreasonably delay the removal of vicious
officials, and in many cases would afford no relief what-
ever, in view of the fact that a majority of the officers
contemplated by section 4, article 7, of the constitution,
are elected for only two years, and since the legislature
convenes during the month in which the public officers
referred to take office, and adjourns at the end of sixty
days, not to reconvene until after the term of all county
officers shall have expired, and therefore conferred
plenary power upon the legislature to provide a special
and summary proceeding for the removal of certain
officers. (*State* v. *Borstad,* 27 N. D. 533, 147 N. W. 380,

Ann. Cas. 1916B, 1014; *State* v. *District Court,* 53 Mont. 350, 165 Pac. 294.)

Numerous objections are made to the act under which the proceedings in the district court were had, but, as we view the authority conferred by the section of the constitution mentioned, they may be all brushed aside, save and except such objections only as go to the title of the act. We say this for the reason that the power of the legislature is plenary so far as providing for the method of procedure is concerned. We do not think there is any authority which questions this view. The Supreme Court of California, in *Re Marks,* 45 Cal. 199, had under consideration a statute substantially the same as ours, and one which was enacted pursuant to a constitutional provision to all intents and purposes the same as ours. The court in that case said:

"The act of 1853 does provide how, in what manner, upon what procedure, in what court, officers, not of the first class, shall be tried for that misdemeanor in office known at common law, and recognized in this statute as neglect of official duty. The power of the legislature to enact such a statute (under the latter clause of section 18) is plain—as obvious as is the power of the assembly to prefer and that of the senate to try articles of impeachment under the first clause of the same section. The power to remove certain officers for misdemeanor in office is exercised only by the assembly and senate under the name of impeachment—the like power to remove all other officers under like circumstances and for like causes is to be exercised 'in such manner as the legislature may provide.' (Section 19.) The power to provide the manner in which a delinquent is to be tried in the second case is on a footing with the power to directly remove the delinquent by the judgment of the senate in the first case."

In a comparatively recent case, in an opinion by Beatty, C. J., and concurred in by the full court, the Supreme Court of California said:

"This is a summary proceeding regulated, as far as it

is regulated at all, by a statute (Pen. Code, sec. 758, *et seq.*) which the legislature has plenary power to pass under the authority of section 18 of article 4 of the constitution, providing for the trial of public officers for misdemeanor in office otherwise than by impeachment. It is exempt from merely technical rules of procedure. (*Case of Burleigh,* 145 Cal. 36, 78 Pac. 242.)" (*In Re Shepard,* 161 Cal. 171, 118 Pac. 513.)

The Supreme Court of Minnesota, in considering the authority of the legislature under a similar constitutional provision in the case of *State* v. *Peterson,* 50 Minn. 239, 52 N. W. 655, expressed the following views:

"Article 13 of the constitution, after providing in section 1 for 'the removal of state officers and judges of the supreme and district courts by impeachment,' then provides in section 2 that 'the legislature of the state may provide for the removal of inferior officers from office for malfeasance or nonfeasance in the performance of their duties.' The power thus conferred is plenary, and confers authority upon the legislature to vest the power of removal, and the determination of the question whether cause for removal exists, in any department of the government, or in any officer or official body, it may deem expedient. There is no requirement that this power shall be conferred only on the courts. Indeed, the very purpose of this provision was to provide a more summary and less cumbersome method of removing inferior officers than by impeachment or by indictment, according to the course of the common law, for malfeasance or nonfeasance in office. If, then, the power of removal vested in the governor by this act be judicial, we have here the constitutional authority for it."

The Supreme Court of Montana, in *State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 296, in speaking of the authority conferred by a section of the constitution of that state similar to section 4, article 7, of our constitution, used the following language:

"Proceedings for the removal of a public officer do

not necessarily partake of the nature of a criminal prosecution. Indeed, the power to remove an unfaithful or negligent public official is not essentially a judicial power. Under our constitution, its exercise is left to the legislature itself or to such other authority as the legislature may designate. This is the plain import of section 18, above, and is the general rule in the absence of any constitutional declaration upon the subject. (29 Cyc. 1370; *State* v. *Doherty,* 25 La. Ann. 119, 13 Am. Rep. 131; *Territory* v. *Cox,* 6 Dak. 501.) The power may be conferred upon the governor (*Cameron* v. *Parker,* 2 Okl. 277, 38 Pac. 14), or upon a board (*Donohue* v. *Will Co.,* 110 Ill. 94). It may be conferred upon a court of general or limited jurisdiction to be exercised in the mode provided by law, and consequently, if the legislature sees fit to require a jury trial, a jury trial must be had; but, if it sees fit to provide for a summary hearing without a jury, no constitutional right of the accused is infringed."

In *State* v. *Grant* 14 Wyo. 41, 81 Pac. 798, 1 L. R. A. n. s. 588, 116 Am. St. Rep. 982, the Supreme Court of Wyoming, in passing upon the power of the legislature under a similar constitutional provision, said:

"The legislature, however, under the provisions of section 19, article 3, of the constitution, did have express warrant for the passage of an act for the removal of officers not subject to impeachment, and the method of procedure in effecting such removal is not limited by any other constitutional provision. (*Attorney-General* v. *Jochim,* 99 Mich. 358, 58 N. W. 611, L. R. A. 699, 41 Am. St. Rep. 606.)"

In *Skeen* v. *Paine,* 32 Utah, 295, 90 Pac. 440, it is said:

"Section 21, article 6, of the constitution, among other things, provides that such removals may be made 'in such manner as may be provided by law.' Here a plenary power is conferred upon the legislature. This provision of the constitution is special, and the mere fact that in another part of the same instrument (sec. 18, art. 8) it is provided that prosecutions shall be in

the name of 'The State of Utah' does not necessarily prevent a proceeding civil in its consequences from being conducted in the name of a private person."

The Supreme Court of Michigan, in *People ex rel. Clay* v. *Stuart,* 74 Mich. 411, 41 N. W. 1091, 16 Am. St. Rep. 644, in passing upon a similar constitutional provision, observed:

"It will be noticed that the power conferred by this section of the constitution is plenary. The legislature is to provide by law for the removal of county officers, etc., in such manner as to them shall seem just and proper. The power conferred is in its nature political, and has reference exclusively to the polity of government, which would be inherently defective if no remedy of a summary nature could be had to remove from office a person who, after his election, had been convicted of crime, or who neglected his duty, or who was guilty of malversation in the administration of his office. Every person elected to a county, township, or school district office holds it subject to removal, in the manner provided by law under this section of the constitution, which commits to the legislature the whole subject of removal. They are to prescribe the mode in which it shall be done, and this includes everything necessary for the accomplishment of the object. The causes, the charges, the notice, the investigation, and the determination, and by whom these shall be conducted and the removal adjudged, are all in the discretion of the legislature."

In *State* v. *Henderson,* 145 Iowa, 657, 124 N. W. 767, Ann. Cas. 1912A, 1286, in passing upon a case growing out of constitutional and statutory provisions similar to ours, we find the following:

"Section 5 of the act under which this proceeding is prosecuted expressly provides that the 'proceeding shall be summary in its nature and triable as an equitable action.' We think, therefore, that no constitutional right of the defendant was invaded."

See, also, *Moore* v. *Strickling,* 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279; *Woods* v. *Varnum,* 85 Cal. 639, 24

Pac. 843; *People* v. *Stuart,* 74 Mich. 411, 41 N. W. 1093, 16 Am. St. Rep. 644; *State* v. *Seawell,* 64 Ala. 225; *State* v. *Savage,* 89 Ala. 1, 7 South. 7, 7 L. R. A. 426.

2. In this connection we incidentally call attention to section 1, article 3, of our constitution, which reads:

"The powers of the government of the State of Nevada shall be divided into three separate departments —the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Thus we see that the constitutional convention made it plain that other powers than those expressly mentioned in section 6, article 6, of the constitution, might be delegated to the district court.

The language of Norcross J., in *Bell* v. *District Court,* 28 Nev. 280, 81 Pac. 875, 1 L. R. A. n. s. 843, 113 Am. St. Rep. 854, 6 Ann. Cas. 982, is not opposed to the view we have expressed. What was said in that case was directed to an entirely different question from the one here presented, as will be readily seen from a reading of the opinion.

3. But it is urged, and with apparent earnestness, that the complaint in removal proceedings in the district court charged the defendant with a crime, and that he was entitled to a jury trial under that section of the constitution which provides that the right of trial by jury shall remain inviolate forever. We think we have disposed of this question by showing that the legislature had plenary power under the terms of the constitution to pass an act authorizing the removal of officers, and pursuant to that authority had passed a law which provided a summary and special proceeding for such cases. In this connection we wish to say that the case of *Kilburn* v. *Law,* 111 Cal. 237, 43 Pac. 615, is not in conflict with this view; for, while it is true that the court in that case, as in other cases, held that the proceeding

to remove a public officer was criminal in its nature, the court said: "The intent to make it a criminal prosecution is to my mind clear." The opinion then proceeds to give the reasons which induced the court to take that view, and it is apparent that its conclusion was reached because it was the evident intent of the legislature that the proceeding should be criminal in its nature, and not because the constitution contemplated a proceeding inherently criminal in its character. In fact, strange as it may seem, the reply brief of the petitioner practically concedes as much; for, in answering the contention of respondent on this point, wherein it was sought to show why different proceedings had existed in California in removal cases, counsel say:

"The case—*In Re Marks,* 45 Cal. 199—is relied upon by respondent, but it will be noted that the opinion in that case was prior to the adoption of the codes and was had under a provision of law which ceased to exist upon the adoption of the codes."

But the Supreme Court of California has held that though the proceeding is criminal in nature, under certain statutes, the defendant was not entitled to a jury. (*People* v. *McKamy,* 168 Cal. 533, 143 Pac. 752.)

4. The contention that the proceeding should have been instituted in the name of the State of Nevada is entirely without merit. As we have shown, the inquiry was had under a special proceeding, provided pursuant to plenary power conferred by the constitution. Even in California, after the adoption of the codes, and under statutes which the supreme court of that state held showed a clear intent upon the part of the legislature to make the proceedings criminal in their nature, it was decided that the accusation did not have to be made in the name of the people. (*Woods* v. *Varnum,* 85 Cal. 639, 24 Pac. 843.)

5. Objection is made to that part of the act which provides that the court in making the order of removal shall enter a judgment in favor of the complainant

for $500. The complainant and the defendant in the removal proceedings expressly agreed that this require-ment of the statute might be waived, and accordingly no such judgment was rendered by the court; hence we are of the opinion that it is not necessary that we determine this question, as it is a well-established rule of law that no one can urge that an act or part of an act is unconstitutional if his rights are in no way infringed by it. (6 R. C. L. p. 89; 8 Cyc. 789.)

6. The objection made to the title of the act of 1909 is without merit. The title of the act relates to one sub-ject only, and that is to the removal of public officers. It is true that the act deals with three methods of removal —one by accusation made by the grand jury, one by impeachment by the assembly, and one by accusation by a private citizen. That part of the act relating to impeachment by the assembly prescribes the method of procedure to be followed in the trial by the senate. The act also provides for the summary method by accusation of a private individual, and makes provision for the proceedings after the accusation is filed. And, apparently realizing that individuals are reluctant to file charges against a public official as the basis for his removal, the legislature also made provision for the initi-ation of proceedings for the removal of a public officer by accusation on the part of the grand jury. In other words, this act not only supplements the constitutional provisions for the removal of state officials, but creates two separate, distinct, and independent methods of removal of county officers. Just why the legislature thought it necessary to create two methods of removal of county officials is not clear, but since one method is more drastic than the other, it may be that the legisla-ture anticipated that there might be occasions when a drastic measure would be needed; but whatever the reason, or lack of reason, the statute, which was enacted pursuant to plenary authority by clear and unmistakable language, creates the two methods, and beyond that we cannot inquire.

For the reasons given, it is ordered that the writ of *certiorari* heretofore issued be, and the same is hereby, dismissed.

McCARRAN, C. J., concurring:

I concur.

Sections 1, 2, and 3 of article 7, of our constitution lay down the manner and authority by which certain specified state and judicial officers may be removed from office. So far as these officers are concerned, the mode of removal from office is by the constitution limited and fixed. But in contemplation of the necessity for removal of civil officers other than those designated, section 4 of article 7 of the constitution provides:

"Provision shall be made by law for the removal from office of any civil officer other than those in this article previously specified, for malfeasance, or nonfeasance in the performance of his duty."

By this provision of the organic law the power was reserved and assigned to the legislative branch of the government to provide a way by which civil officers other than those whose office is within the contemplation of sections 1, 2, and 3 of article 7 might be removed for malfeasance or nonfeasance in office. To meet this and to provide a rule of conduct by which removal from office might be accomplished as to those officers not affected by sections 1, 2, and 3 of article 7 of the constitution, the legislature of 1909 passed the act under which petitioner, as sheriff of Clark County, was brought before the district court. It is the right of the designated authority or tribunal of determination, the district court, to entertain such proceeding that is here questioned. Section 6 of article 6 of the constitution, in prescribing the jurisdiction of the district court, contains no words of limitation as to matters of which that court may take jurisdiction, but rather excludes other courts and tribunals from exercising jurisdiction over those subject-matters specifically named as belonging to that of the district court.

McCarran, C. J., concurring

To declare that section 6 of article 6 of the constitution by its language limited the jurisdiction of the district court to matters specifically named in that section would be to open discussion to any number of matters and proceedings which by reason of this constitutional provision would find no jurisdictional resting place. Such was never the intention of the authors of our constitution.

By section 4 of article 7 of the constitution the legislative branch of the government was given full power to enact laws looking to the impeachment and removal of civil officers other than those mentioned in the preceding sections. The power to enact such laws implied power to assign the accomplishment of the law's purpose to a designated functionary. The legislature of 1909 carried out this power by designating the district court as the tribunal before which matters of this character should be heard and determined. In enacting the statute and designating the tribunal before which its object should be carried out, the legislature, having full power in the matter, could, as it did, concisely and emphatically outline the steps to be taken and rigidly lay the course to be pursued. (*In Re Shepard,* 161 Cal. 171, 118 Pac. 513.)

In my judgment, the matter contemplated by the statute cannot properly be termed a criminal proceeding, and I say this fully aware of the decision of the Supreme Court of California in the matter of *People* v. *McKamy,* 168 Cal. 531, 143 Pac. 752, in which is reviewed the former decisions of that court. (*In Re Curtis,* 108 Cal. 661, 41 Pac. 793; *Wheeler* v. *Donnell,* 110 Cal. 655, 43 Pac. 1; *In Re Burleigh,* 145 Cal. 35, 78 Pac. 242.) It is a proceeding for removal from office, rather than a prosecution for malfeasance or nonfeasance in office. Criminal prosecution might follow after removal, in which event a plea of once in jeopardy could not be interposed.

It is contended that this statute is in contravention of constitutional provision because trial by jury is not contemplated in the proceeding before the district judge.

McCarran, C. J., concurring

In this respect it may be properly said that the proceeding contemplated by the statute is not a trial but rather a proceeding to remove from public office, and as such does not involve either life, liberty, or property.

The question here involved has in one form or another been passed upon on several occasions by the Supreme Court of the United States under the contention that by such statute the officer removed was deprived of due process of law under the fourteenth amendment.

In the case of *Kennard* v. *Louisiana ex rel. Morgan,* 92 U. S. 80, 23 L. Ed. 478, statutory proceedings much more summary than those of ours were considered. In that instance a statute of Louisiana, instituted for testing right to office, was under consideration. The statute was upheld as providing due process of law, and the provision which eliminated hearing before a jury was held to be not repugnant to the amendment.

In the case of *Foster* v. *Kansas ex rel. Johnston, Attorney-General,* 112 U. S. 201, 5 Sup. Ct. 8, 97, 28 L. Ed. 696, it appears that the attorney-general of the State of Kansas proceeded in *quo warranto* in the supreme court of the state for the removal of a county attorney, alleging his failure to prosecute certain violations of the law of that state. The case went to the supreme court of the United States on rule, and there, after referring to *Kennard* v. *Louisiana, supra,* the court held that the proceeding was of a civil nature, and inasmuch as the process for removal, though summary, provided for bringing the party into court and notifying him of the case he had to meet, and gave him an opportunity to be heard in his defense and gave opportunity for deliberation and judgment of the court, it constituted due process of law.

In the case of *Wilson* v. *North Carolina,* 169 U. S. 586, 18 Sup. Ct. 435, 42 L. Ed. 865, the matter grew out of the suspension of a railroad commissioner by the governor of North Carolina. When the case was carried to the Supreme Court of the United States, Mr. Justice Peckham, speaking for that court, said:

"The controversy relates exclusively to the title to a

state office, created by a statute of the state, and to the rights of one who was elected to the office so created. Those rights are to be measured by the statute and by the constitution of the state, excepting in so far as they may be protected by any provision of the federal constitution."

Continuing, it was said:

"The procedure was in accordance with the constitution and laws of the state. * * * What kind and how much of a hearing the officer should have before suspension by the governor was a matter for the state legislature to determine, having regard to the constitution of the state."

In my judgment, that portion of the statute here involved which would permit of a judgment against the deposed officer of any sum of money is clearly in violation of the constitutional guaranty prohibiting the deprivation of property without due process of law. Even, however, were this involved here, which is not the case, since no such judgment was entered in this matter against petitioner in the district court, it would not avail in furtherance of petitioner's contention, for, under the established rule in this court, constitutional portions of the statute might be enforced if intact and operative, and the unconstitutional portions might be rejected. *Virginia & Truckee R. R. Co.* v. *Henry,* 8 Nev. 165.)

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.