GRANT L. ROBISON, Petitioner, *v.* THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ORMSBY, AND THE HONORABLE FRANK B. GREGORY, THE PRESIDING JUDGE THEREOF, RESPONDENTS.

No. 4017

June 25, 1957            313 P.2d 436

*Harvey Dickerson,* Attorney General, *William N. Dunseath, D. W. Priest* and *C. B. Tapscott,* Deputy Attorneys General, of Carson City, for Petitioner.

*H. Dale Murphy,* of Reno, for Respondents.

## OPINION

By the Court, BADT, C. J.:

One Don Crawford filed a petition in the respondent court for the removal of Grant L. Robison, state superintendent of banks, on the ground that the latter had neglected to perform sundry official duties prescribed by law. Robison seeks from this court a writ of prohibition restraining respondent court from taking any further steps or proceedings under the removal petition on the ground that under constitutional provisions the state superintendent of banks is removable from office by impeachment proceedings only. We have concluded that the point is well taken and that the writ prayed for must issue.

The statute under which the removal petition was filed now appears as sec. 283.440 NRS[1] (secs. 4860–4861, N.C.L. 1943–1949 Supp.).

The statute quoted in the margin was enacted pursuant to section 4 of Article VII of the constitution of the state entitled "Impeachment and Removal from Office". The entire article comprises four sections. Section 1 vests the sole power of impeaching in the

[1] "1. Any person now holding or who shall hereafter hold any office in this state who shall refuse or neglect to perform any official act in the manner and form prescribed by law, or who shall be guilty of any malpractice or malfeasance in office, may be removed therefrom as hereinafter prescribed in this section.

"2. Whenever a complaint in writing, duly verified by the oath of any complainant, shall be presented to the district court alleging that any officer within the jurisdiction of the court: * * *

"(b) Has refused or neglected to perform the official duties pertaining to his office as prescribed by law; * * * the court shall cite the party charged to appear before it on a certain day, not more than 10 days or less than 5 days from the day when the complaint was presented. On that day, or some subsequent day not more than 20 days from that on which the complaint was presented, the court, in a summary manner, shall proceed to hear the complaint and evidence offered by the party complained of. If, on the hearing, it shall appear that the charge or charges of the complaint are sustained, the court shall enter a decree that the party complained of shall be deprived of his office. * * *"

assembly by concurrence of a majority vote, with impeachments triable by the senate, of which a concurrence of two thirds is required for conviction. Section 2 reads as follows: "Who May Be Impeached. § 2. The governor and the other state and judicial officers, except justices of the peace, shall be liable to impeachment for misdemeanor or malfeasance in office; but judgment in such case shall not extend further than removal from office, and disqualification to hold any office of honor, profit, or trust, under this state. The party, whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment, and punishment according to law." Section 3 provides for the removal of the justices of the supreme court and the judges of the district courts "[f]or any reasonable cause, to be entered on the journals of each house, which may or may not be sufficient grounds for impeachment" on the vote of two-thirds of the members of each branch of the legislature. Section 4 reads as follows: "Removal of Civil Officers. § 4. Provision shall be made by law for the removal from office of any civil officer other than those in this article previously specified, for malfeasance or nonfeasance in the performance of his duties."

Respondents contend that the constitutional provision governing impeachment applies only to "constitutional officers" and not to the holders of offices created by the legislature and appointed by the governor. They refer to section 5 of Article XVII of the constitution which provides the salaries of the governor, the secretary of state, the state controller, the state treasurer, the surveyor general, the attorney general and superintendent of public instruction and to section 18 of Article XVII again specifying these officers, as evidence that these are the officers referred to.

In the Constitutional Debates involving the adoption of Article VII of the constitution entitled "Impeachment and Removal from office" (Nev. Const. Debates and Proceedings, 1864, pp. 541–565) over twenty-five pages of fine print are devoted to the four sections and to the

proposed amendments to the four sections comprising that article. Portions of these debates are not only eloquent but impassioned, particularly the portions relating to proposed provisions for impeachment and removal of members of the judiciary. They reflect some of the tragic history of the territorial court. To reproduce these debates extensively in this opinion would unreasonably extend it. Several points, however, clearly emerge. All emphasis is supplied.

Section 4, as originally proposed, read as follows: "Provision shall be made by law for the removal from office *of any civil officer,* for malfeasance or nonfeasance in the performance of his duties." This, be it remembered, followed the provisions of section 2 providing for impeachment of the *governor and other civil officers* under the state government for misdemeanor or malfeasance in office, and section 3 which provided for removal from office of the justices of the supreme court and the district judges, for any reasonable cause, "which may or may not be sufficient grounds for impeachment" on the vote of two-thirds of the members elected to each branch of the legislature. The apparent duplication of both the grounds and the method of removal, particularly as applied to judicial officers (with additional grounds), was hotly defended. Various methods and various amendments were suggested to correct the duplications, both as to members of the judiciary and other officers. What finally emerged was an amendment to section 4 to the effect that provision be made by law for the removal from office of any civil officer *"other than those in this article previously specified"*. It became clearly manifest that the officers specified in either section 2 or section 3 were not subject to removal through any means to be provided by the legislature, but only by the means specifically provided in sections 2 or 3. After lengthy arguments the closing explanation, which apparently satisfied and was accepted by all members of the convention, was "[The impeachment provision] includes the state officers, such as the Governor, Attorney General, Secretary of State, and so on, and leaves all the

county officers out" (Nev. Const. Debates and Proceedings, 1864, p. 553). Mr. Nourse, who made such final statement, had previously indicated his agreement with the chairman's conception that the offices not included in the impeachment section but subject to legislative provision included "county and township" offices.[2] Id. 553. This was indeed the reaction of this court in Gay v. District Court, 41 Nev. 330, 171 P. 156, 157, 3 A.L.R. 224, in a proceeding which questioned the jurisdiction of the district court to entertain removal proceedings under the statute against the sheriff of Clark County. COLEMAN, J., speaking for the court, said: "The constitutional convention, in adopting section 4 of Article 7 of the constitution, realized, no doubt, that to confer upon legislative bodies the duty of impeaching, trying, and removing district, county, township, and municipal officers would be to place an undue burden upon the legislature" and referred further to delays and lack of relief in relying only on impeachment proceedings for officers holding two-year terms. He referred to cases under the California constitution providing for the removal of "certain officers" by impeachment and "all other officers * * * 'in such manner as the legislature may provide'". McCARRAN, C. J., in concurring, noted that the legislative act passed pursuant to section 4 of Article VII was "to provide a rule of conduct by which removal from office might be accomplished as to those officers *not affected by sections 1, 2, and 3 of Article 7 of the constitution* * * *," and again referred to section 4 as giving power to the legislature "to enact laws looking to the impeachment and removal of civil officers *other than those mentioned in the preceding sections*".

No cases have been cited directly in point. Respondents do indeed contend that "under similar constitutional provisions" it was held that constitutional provisions for

[2]As to the suggestion that the impeachment proceedings referred only to elective as distinguished from appointive officers, a careful reading of the lengthy debates on this section of the constitution reveals not a single mention of any such distinction.

impeachment did not exclude removal under statutory proceedings, in the cases of Holmes v. Osborn, 57 Ariz. 522, 115 P.2d 775; State ex rel. De Concini, Attorney General v. Sullivan, 66 Ariz. 348, 188 P.2d 592, and People v. Shawver, 30 Wy. 366, 222 P. 11.

In the Osborn case the court very aptly stated: "Whether the process of impeachment is exclusive depends upon the fundamental laws, and these laws are so different that the decisions under them lend very little aid in reaching a conclusion under ours." [57 Ariz. 522, 115 P.2d 782.] The truth of this is apparent in attempting to fit the Osborn holding that the constitutional provision for impeachment of certain officers was not exclusive, to the situation under the Nevada constitution. The Arizona constitution contained only two sections similar to our sections 1 and 2 of Article VII. However, the Arizona constitution, like the Wyoming constitution, lacks any correspondence with our sections 3 and 4 and particularly the provision of our section 4 authorizing the legislature to provide by law for the removal from office of any civil officer *"other than those in this article previously specified, * * * ."* Thus the limitation of legislative authority provided in our constitution robs of all force the holding in the two Arizona cases and the Wyoming case above mentioned.

That the state superintendent of banks is a state officer we believe to be beyond question. No language used in Article VII of the constitution is susceptible of any construction restricting it to what has been referred to as "constitutional officers" or to elective state officers as distinguished from appointive state officers. And, as heretofore pointed out, not the slightest mention or reference to any such possible distinction was made in the lengthy constitutional debates on the subject. The provisions of section 2 of Article VII providing that "the governor and the other state and judicial officers, except justices of the peace, shall be liable to impeachment * * * " concededly includes the secretary of state, state controller, state treasurer, surveyor general, attorney

general and superintendent of public instruction, and it is further conceded that as to such officers the legislature is powerless to act. This results from the well recognized rule that an express constitutional provision requiring a certain thing to be done in a certain way is exclusive to like extent as if it had included a negative provision to the effect that it may not be done in any other way. "Negative words are not indispensable in the creation of limitations to legislative power * * *. [I]mplied as well as express restrictions must be regarded * * *." State v. Arrington, 18 Nev. 412, 415, 4 P. 735, 737.

As the state superintendent of banks is therefore not subject to removal under the provisions of NRS 283.440, the petition for the writ of prohibition restraining further proceedings thereunder must be granted, and it is so ordered.

EATHER and MERRILL, JJ., concur.