Judge William P. Powers brings two appeals, which have been consolidated for our review. One is from the decision of the Board of Control of the Judicial Retirement Fund. That decision denied Judge Powers (Powers) disability retirement which he sought voluntarily under Code 1975, § 12-18-7. The other appeal is from the judgment of the Court of the Judiciary (C.O.J.) of July 11, 1981, entered on a complaint filed by the Judicial Inquiry Commission (J.I.C.). That judgment censured Powers, suspended him from office with pay until December 31, 1981, and, thereafter, suspended him without pay for the remainder of his term.
The central issue to these appeals is whether Powers is entitled to be retired due to mental disability, instead of being denied retirement, censured, and ultimately suspended from office without pay. We find the judgment of the C.O.J. to be supported by clear and convincing evidence and we, therefore, affirm it. For reasons explained below, we find it unnecessary to review the determination of the Board.
Powers served as a circuit judge in the 29th Judicial Circuit from January 18, 1971, to March 27, 1981. He elected to become a member of the Judicial Retirement Fund on September 18, 1973. On February 12, 1981, Powers filed his declaration of intention for voluntary retirement with Chief Justice Torbert of this court. That declaration was filed pursuant to Code 1975, §12-18-7. In support of his declaration, Powers filed written statements from five medical doctors citing mental and physical causes making him permanently disabled from performing his duties as circuit judge. The Chief Justice requested that Powers be examined by Patrick H. Linton, M.D., Chairman of the Department of Psychiatry at the School of Medicine of the University of Alabama in Birmingham. Dr. Linton's written report concluded that Powers suffered from "an anxiety disorder manifested by insomnia, multiple somatic complaints and inability to organize and plan intellectual activity." Linton found Powers unable to function in his role as judge, but also found that he was treatable in a different setting.
After Powers filed his declaration with the Chief Justice, the J.I.C. filed its complaint against Powers with the C.O.J. on March 27, 1981. Powers knew of the J.I.C.'s investigation of him as early as December 18, 1980. At that time the J.I.C. had advised Powers of its investigation. In connection with that investigation, Powers appeared before the J.I.C. on January 30, 1981.
The complaint filed against Powers contained six counts. Count one charged him with violating Canons 2 and 3 A (5), Alabama Canons of Judicial Ethics. Canon 2 requires a judge to "avoid impropriety and the appearance of impropriety in all his activities." Canon 3 A (5) mandates that a judge promptly dispose of court business, and requires the filing of semi-annual reports with the J.I.C. and Department of Court Management (now Administrative Office of Courts), disclosing all matters or cases under submission or advisement for six months or more.
Count one alleged Powers delayed action for an unreasonable time on 26 cases that had come before him. Count two alleged *Page 747 
Powers also violated Canon 3 A (5) by his failing to report four cases taken under submission for six months or longer. Count six alleged that, at the time of the filing of the complaint, Powers was mentally unable to perform his duties as circuit judge. This charge was founded on Ala. Const. 1901, amend. 328, §§ 6.17 (b)(2) and 6.18 (a)(2), each of which addresses the matter of removing from office a judge who is no longer mentally capable of performing his duties. Count three was struck as a separate count on motion of the J.I.C. The C.O.J. did not find Powers guilty of counts four and five. These counts are not at issue on this appeal; therefore, we will not review them.
Powers moved to dismiss the complaint on April 28, 1981, raising various grounds, including the ground that the Court of the Judiciary lacked jurisdiction because he voluntarily elected to file for retirement with the Chief Justice of this court. The Court of the Judiciary denied Powers's motion.
In his amended answer to the complaint, Powers pleaded not guilty to the charges, raised various defenses, and set up two counterclaims. Powers admitted that he was mentally unable to perform his duties as circuit judge, stating that for some time prior to the filing of the complaint, he had been permanently mentally unable to carry out his duties. His counterclaims alleged that he was both physically and mentally unable to function in his capacity as circuit judge.
Powers sought to establish at trial that his mental disability is permanent and that the matters complained of were a product of his mental disability. He contends that he is, in effect, a casualty of the stresses and strains of his office. Powers's deposition, introduced into evidence, reflected numerous personal and professional problems. Those included the hospitalization of his son due to acute depression, his divorce, an alleged confrontation between him and a sheriff resulting in a pistol being pointed at him and his being challenged to a duel, the fire bombing of his house, as well as other problems and difficulties which he encountered as circuit judge.
The C.O.J. heard extensive testimony regarding Powers's mental disability. It is unnecessary for us to set out, in synopsis, all of that testimony. For the purpose of our review, we note the testimony of the physicians, which provides sufficient background to understand the judgment entered by the C.O.J. Four physicians testified. Three, Drs. Phillips, Duke, and Nuckols, had earlier provided written statements in support of Powers's declaration seeking voluntary retirement. The fourth, Dr. Linton, had evaluated Powers at the request of the Chief Justice, and was called by Powers as a witness.
Harry L. Phillips, M.D., is a family practitioner in Columbiana, Alabama. He is not a psychiatrist. Although Phillips had known Powers since the mid-1960's, he had not seen Powers professionally until January 1981. Phillips testified that Powers was physically and mentally incapable of functioning as a circuit judge. In response to questions propounded by the C.O.J., Phillips stated that Powers's disability would continue for the forseeable future. He explained he did not see Powers functioning as a judge for one to three years.
Warren C. Duke, M.D., is a family physician who practices in Talladega, Alabama. He, too, is not a psychiatrist. Duke had known Powers, both as a friend and patient, since 1970. Duke noticed a change in Powers's mental attitude after his house was fire bombed.[1] The changes he noticed were "depression, anxiety progressed into paranoia at times." About a year and one-half before trial, Duke recommended to Powers that he receive psychiatric treatment. Duke continued seeing Powers at "irregular" intervals until the time of trial. In Duke's opinion, Powers was mentally unable to perform his duties as circuit judge on a full-time basis. *Page 748 
Joe Nuckols, M.D., is a physician specializing in psychiatry. He is one of the chief psychiatrists at Hillcrest Hospital in Birmingham, Alabama. Nuckols first saw Powers on February 16, 1981, for an examination. Nuckols concluded that Powers suffered from a neurosis, and he found Powers's illness to be a reaction to the events which transpired during his judgeship. In Nuckols's opinion, it would take from two to four years for a change to be brought about in Powers's condition.
Patrick H. Linton, M.D., saw Powers at the request of the Chief Justice. Linton testified Powers suffered from an "anxiety disorder with some symptoms of depression." According to Linton, "there is nothing ordinarily about this illness that is total and/or permanent by itself." He stated that Powers would not be able to continue as circuit judge and undergo treatment. However, Linton observed that if taken out of the situation he was in, Powers could be treated. Linton acknowledged that no qualified psychiatric expert could conclude Powers's condition was permanent.
The trial lasted from July 9-11, 1981. On July 11, the C.O.J. granted the J.I.C.'s motion to strike Powers's counterclaims. At the conclusion of the trial, the C.O.J. entered its judgment finding that Powers violated Canons 2 and 3 A (5). It found, on counts one and two, that he failed to promptly dispose of cases under submission, and that he failed to report cases pending before him for more than six months. On count six, the C.O.J., citing Powers's admission to that count and the stipulations of the parties,[2] found Powers to be "mentally unable to perform his duties as a circuit judge at the present time." After the C.O.J. rendered its judgment, the Chief Justice declined to find, as a matter of fact, that Powers was mentally or physically unable to carry out his duties on a full-time basis, citing the fact that the C.O.J. did not retire Powers. The Chief Justice's findings were endorsed by him and forwarded to the Secretary-Treasurer of the Judicial Retirement Fund.
Powers contends that the unrebutted medical testimony established that he was permanently mentally unable to perform his duties as circuit judge, and, therefore, that he should have been retired. We disagree with Powers's characterization of the evidence. The medical testimony we have summarized above indicates Powers's condition is not permanent and, in fact, is treatable in a period of time ranging from one to four years. Under Ala. Const. 1901, amend. 328, § 6.18 (b), this court reviews "the record of the proceedings on the law and the facts" on an appeal from a decision of the C.O.J. The standard of review is whether the evidence is clear and convincing.Strickland v. Judicial Inquiry Commission, 388 So.2d 1202 (Ala. 1980); In the Matter of Samford, 352 So.2d 1126 (Ala. 1977) (C.O.J.'s judgment entitled to presumption of correctness if evidence is clear and convincing). Consistent with that standard, the C.O.J. could conclude that Powers's disability existed only at the present time. It could appropriately suspend him from office without retiring him. We find Powers's contention and characterization of the evidence to be lacking in merit and at odds with the facts.[3]
Powers argues that the C.O.J. failed to consider the issue of his entitlement to disability retirement. In support of his argument he cites the fact that the C.O.J. struck his counterclaim seeking retirement at the conclusion of the evidence, and that its judgment finding him to be disabled at the present time was based on his answer and the parties' stipulations. With this reasoning, Powers contends that he is entitled to the de novo review provided for appeals *Page 749 
from decisions of the Board under Code 1975, § 12-18-2 (c). Such a review, Powers insists, will entitle him to the disability retirement he voluntarily seeks.
We find several flaws in Powers's theory. During the pendency of Powers's declaration of intention to retire filed with the Chief Justice, the J.I.C. filed its complaint against Powers with the C.O.J. The C.O.J. has authority to retire a judge who is mentally or physically incapable of performing his official duties. In pertinent part, Ala. Const. 1901, amend. 328, § 6.18 (a), provides:
 The court [of the judiciary] shall have authority, after notice and public hearing (1) to remove from office, suspend without pay, or censure a judge, or apply such other sanction as may be prescribed by law, for violation of a canon of judicial ethics, misconduct in office, failure to perform his duties, or (2) to suspend with or without pay, or to retire a judge who is physically or mentally unable to perform his duties. [Emphasis supplied.]
Although Powers could elect to voluntarily seek retirement under § 12-18-2 (c), the filing of the complaint with the C.O.J. precluded Powers from utilizing that means. If that were not the case, the jurisdiction of the C.O.J. could be ousted by a judge seeking to use § 12-18-7 as a way of escaping a disciplinary proceeding. Analogously, the Supreme Court of North Carolina held that the jurisdiction of a commission vested with the authority to investigate and commence a disciplinary proceeding against a judge is not ousted by the judge's election to resign where the election is made before charges are filed, but becomes effective after their filing. Inre Peoples, 296 N.C. 109, 250 S.E.2d 890 (1978). Here, although Powers sought voluntary retirement under § 12-18-7, that proceeding did not conclude before the J.I.C. filed its complaint with the C.O.J. The C.O.J., therefore, assumed jurisdiction over the retirement issue. The Chief Justice, therefore, could look to the judgment of the C.O.J., which did not retire Powers, and decline to find and certify that Powers met the conditions prerequisite to retirement. After the C.O.J. rendered its judgment, Powers's declaration of intention to retire under § 12-18-7 before the Chief Justice effectively became moot. He cannot now attempt a second bite at the apple by seeking the de novo review ordinarily provided for proceedings under § 12-18-7 by § 17-18-2 (c).
Powers argues that the C.O.J. never reached the issue of his alleged permanent mental disability. We do not accept that argument. It is a well-settled principle that:
 In the absence of specific findings of fact by the trial court, this court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidence. O'Connor v. Rabren, 373 So.2d 302 (Ala. 1979); Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975).
Thomas v. Davis, 410 So.2d 889, 891 (Ala. 1982). The fact that the C.O.J. only found Powers to be "mentally unable to perform his duties as a circuit judge at the present time" (emphasis supplied), necessarily includes an implicit finding that Powers does not suffer from a permanent mental disability. The C.O.J.'s striking of Powers's counterclaim for retirement at the close of evidence, and after extensive evidence on the alleged permanency of Powers's disability, is consistent with the implicit finding that no permanent mental disability existed.
Powers' contention that the only issue before the C.O.J. was whether he was mentally disabled at the then present time also is without merit. Powers's argument is based on the fact that the C.O.J. struck his counterclaim for retirement, and the fact that the J.I.C. worded its allegation of Powers's mental disability in the present tense. That part of the complaint stated:
COUNT SIX
Facts
 66. At the time of the filing of this complaint, Powers is mentally unable to perform his duties as a circuit judge. *Page 750 
Charge Twenty-One
 67. William P. Powers, a Circuit Judge of the Twenty-Ninth Judicial Circuit of Alabama, is mentally unable to perform his duties as a circuit judge, within the meaning of sections 6.17 (b)(2) and 6.18 (a)(2) of Amendment No. 328 to the Alabama Constitution of 1901.
That wording did not prohibit the C.O.J. from exercising its authority under Ala. Const. 1901, amend. 328, § 6.18 (a)(2), to retire Powers if it found him permanently mentally disabled. The wording of the charge in the present tense was proper. It would have made no sense to allege that Powers had been mentally disabled in the past. Although the complaint could have been drawn to allege that Powers was presently disabled, and that his disability was expected to continue in the future, such an allegation was unnecessary. The allegation of Powers's having a present mental disability does not logically preclude or restrict the C.O.J. from determining the permanency aspect of his disability. Indeed, the extensive evidence presented on the issue of the permanency of Powers's condition, coupled with the question propounded from the bench by the C.O.J., leads us to conclude that the C.O.J. clearly understood it could find Powers to be permanently disabled if the evidence presented led to that conclusion.
Powers insists that the C.O.J.'s judgment, itself, established that it failed to consider the issue of whether his disability is permanent. Powers cites the fact that the judgment made reference to the parties' stipulations and Powers's admission to count six (supra). Powers's argument is based on the assumption that the C.O.J. considered only those motions. We do not find that to be a fair reading of the C.O.J.'s judgment. Powers's argument, therefore, is not well taken.
Next, Powers argues that the evidence showed undisputedly that the matters complained of by the J.I.C. were the product of his mental disability, and were not the result of wilful violation of the Alabama Canons of Judicial Ethics. He concludes, therefore, that the C.O.J. should have retired him instead of censuring and suspending him from office. We have already dealt with the retirement issue. The issue of the C.O.J.'s censuring of Powers, we now address. Again, Powers's characterization of the evidence does not support his theory. We cannot agree that all of Powers's allegedly improper acts can be attributed to his mental disability. There is evidence in the record to support a finding that Powers intentionally delayed rendering a decision on a case under submission to him because he had a personal animosity against one of the attorneys of record. That animosity allegedly arose because the attorney had talked to Powers's wife about their divorce. Under the evidence adduced at trial, the C.O.J. could find that act of Powers's to have been intentional and worthy of censure. For that reason, and others, we find no error in the C.O.J.'s censuring of Powers.
In conclusion, we note that the parties have raised other issues and points of law. Some of these have been pretermitted by our above discussion. Others, not logically pretermitted and not discussed, have been carefully considered, but found to be without merit. We affirm the judgment of the C.O.J., and we dismiss Powers's appeal under § 12-18-2 from the decision of the Board.
Case No. 81-12 — APPEAL DISMISSED.
Case No. 81-14 — AFFIRMED.
MADDOX, JONES, SHORES, BEATTY and ADAMS, JJ., concur.
FAULKNER, ALMON and EMBRY, JJ., dissent.
TORBERT, C.J., recuses himself.
[1] H.E. Mitchell, a former investigator for the Department of Public Safety, testified that the fire bombing occurred in 1971.
[2] The parties' stipulations concerned Powers's handling of various cases taken under submission by him, and they authenticated documents relating to those cases.
[3] In view of our resolution of this issue, we find it unnecessary to fully address the parties' arguments regarding the meaning of the word "permanently" as used in § 12-18-2, which would allow Powers to retire if his mental disability was permanent in nature. Even under Powers's looser construction of "permanently," the C.O.J.'s judgment is still sound. *Page 751