THE HONORABLE PAUL S. GOLDMAN, DISTRICT JUDGE, EIGHTH JUDICIAL DISTRICT COURT, CLARK COUNTY, NEVADA, Appellant, v. RICHARD H. BRYAN, GOVERNOR OF THE STATE OF NEVADA, Respondent.

No. 18259

February 20, 1990                              787 P.2d 372

*Beckley, Singleton, DeLanoy, Jemison* and *List,* and *Carol R. Davis* and *Alan J. Lefebvre,* Las Vegas; *Frank J. Cremen,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, *William Isaeff,* Chief Deputy Attorney General, Carson City, for Respondent.

---

[1]The Honorable John C. Mowbray, Justice, has voluntarily recused himself from consideration of this case.

## OPINION

*Per Curiam:*

On April 22, 1987, appellant Paul S. Goldman, then a district judge in the Eighth Judicial District Court, Clark County, petitioned the First Judicial District Court in Carson City for a writ of mandamus. The petition sought an order compelling the Governor of the State of Nevada to exercise certain powers conferred by NRS 3.092, relating to appellant's alleged entitlement to an early, enhanced disability retirement. The district court denied

the petition. For the reasons set forth below, we affirm the order of the district court.

## FACTS

In early October, 1986, appellant's courtroom became the scene of a series of disturbing and widely publicized incidents culminating in appellant's issuance of an unlawful order jailing a Las Vegas Metropolitan Police Department Commander. *See* Cunningham v. District Court, 102 Nev. 551, 729 P.2d 1328 (1986). More specifically, during the week of October 8, 1986, appellant held three individuals in contempt of his court and ordered them jailed. The individuals "included an 87-year-old woman who refused to testify against her son in a criminal matter, and a courthouse maintenance supervisor who had scheduled repairs on the roof of Judge Goldman's chamber[s] at a time when Judge Goldman subsequently decided to hold court." *Cunningham,* 102 Nev. at 555 n.1, 729 P.2d at 1330. Additionally, on October 10, 1986, appellant held a Las Vegas police commander in direct contempt of his court. Appellant ordered the commander jailed, handcuffed, and placed in the jury box with other prisoners under circumstances wherein appellant lacked both subject matter and personal jurisdiction to take such action. The police commander had been neither disorderly, nor contemptuous of appellant's authority. Nor had he violated any lawful court order. *Cunningham,* 102 Nev. at 558-59, 729 P.2d at 1332-33.

In accordance with its constitutional obligations to administer the justice system in this state and to see that litigation is properly processed and decided, this court initiated an administrative inquiry into whether the preliminary indications of appellant's unusual judicial behavior constituted an emergency of sufficient magnitude to necessitate a temporary reassignment of the public's judicial business. *See* Goldman v. Bryan, 104 Nev. 644, 654-55, 764 P.2d 1296, 1302 (1988). Subsequently, on October 16, 1986, appellant directed a letter to then Chief Justice JOHN C. MOW-BRAY. Citing to Article Six of the Nevada Constitution, appellant requested the court temporarily to relieve him of his responsibility to act on any matters pending before him. Thus, in view of appellant's apparent acknowledgment that he was at least temporarily unfit for judicial service, the court entered a unanimous "Administrative Order" on October 19, 1986, temporarily reapportioning the public's judicial business in the interest of the efficient and effective administration of justice. Specifically, the court's administrative order temporarily precluded appellant from attempting to exercise judicial functions without the prior approval of the court and directed the Chief Judge of the Eighth Judicial District Court to reassign to other judges of that district

any cases then assigned to appellant for trial or hearing "as [was] necessary to accommodate the interest of justice."[1]

Thereafter, on October 30, 1986, appellant directed a letter to Governor Bryan. Referring to NRS 3.092(3)[2], appellant's letter stated in pertinent part:

> Please accept this as formal notice of my intention to retire pursuant to the provisions of N.R.S. 3.092 as I am permanently incapacitated for medical reasons to perform the duties of my office. I would request that this retirement be effective December 31, 1986, or as soon thereafter as the physicians appointed pursuant to N.R.S. 3.092(3) have reported to you. I would further request that my attorney, J. Mitchell Cobeaga, be contacted to arrange for the examinations pursuant to said statute.

On November 17, 1986, the Governor wrote to appellant in response:

> It was not clear from your letter the nature of your potential disability. Therefore, in order to assist in my selection of the physicians to conduct the statutory examination, I'd appreciate you or your treating physician providing me with further information about your incapacity. This information will enable me to select, if necessary, physicians with the requisite expertise.

Subsequently, however, the Attorney General of the State of Nevada advised the Governor not to designate a three-physician panel because complaints respecting appellant's behavior on the bench were "pending or impending" before the Nevada Commission on Judicial Discipline (the Commission). *See* Nev. Const.

---

[1]The text of the administrative order of October 19, 1986, is set forth in Goldman v. Bryan, 104 Nev. 644, 764 P.2d 1296 (1988). As noted in that opinion, appellant thereafter never requested the court "to rescind its administrative order, under which appellant continued to collect his full salary and receive the emoluments of his office, and remained at liberty to use his chambers and any staff support to which he was entitled by virtue of his position." 104 Nev. at 647 n.3, 764 P.2d at 1298.

[2]NRS 3.092(3) provides:

Any judge, or his guardian on his behalf if he is unable to act, who desires to retire voluntarily must give notice in writing to the governor. The governor shall appoint three physicians licensed to practice medicine in the State of Nevada to examine the judge and report the results to the governor in writing. If a majority of the physicians is of the opinion that the judge is permanently incapacitated, physically or mentally, the governor shall approve the retirement. The judge or his guardian must file with the state controller and the state treasurer an affidavit setting forth the fact of his retirement and the years he has served in either or both of such courts.

art. 6, § 21(1); (6) and (7) (conferring on the Commission power and authority to determine the question of a judge's entitlement to permanent disability status).[3] Consequently, the Governor thereafter refrained from taking any action under NRS 3.092(3).

On March 30, 1987, the Commission conducted a hearing, attended by appellant and his counsel, to determine if probable cause existed to believe that appellant had violated the Nevada Code of Judicial Conduct and had committed willful misconduct as proscribed by the constitution. Following that hearing, the Commission entered an order on April 16, 1987, setting forth its findings that the available evidence established the requisite probable cause. The Commission's order further noted that, at the hearing of March 30, 1987, appellant's counsel introduced into evidence appellant's October 30, 1986, letter to the Governor. In view of the allegations of permanent incapacitation contained in that letter, the Commission determined that it was obligated under its constitutional mandate to receive additional evidence respecting appellant's alleged entitlement to enhanced disability retirement, and that it should afford appellant an opportunity to demonstrate that his alleged misconduct "resulted from mental or physical disability for which he is not responsible, in which case he shall be retired for disability pursuant to Nevada Constitution article 6, section 21(7), with an increased pension for disability provided by NRS 3.092(2)."[4] Thus, the Commission concluded that, in fulfilling its function under the Nevada Constitution, it had an obligation to resolve "whether [appellant's] termination of office shall be based on removal for willful misconduct and/or habitual intemperance with allowance of a standard earned pen-

---

[3]Nev. Const. art. 6, § 21(1) provides in part that "a district judge may . . . be censured, retired or removed by the commission on judicial discipline."

Additionally, Nev. Const. art. 6, § 21(6) provides:

No justice or judge may by virtue of this section be:
(a) Removed except for willful misconduct, willful or persistent failure to perform the duties of his office or habitual intemperance; or
(b) Retired except for advanced age which interferes with the proper performance of his judicial duties, or for mental or physical disability which prevents the proper performance of his judicial duties and which is likely to be permanent in nature.

Nev. Const. art. 6, § 21(7) also provides in part that a judge "retired for disability in accordance with this section is entitled thereafter to receive such compensation as the legislature may provide."

[4]Following further proceedings, the Commission concluded that appellant should be removed from his office and was not entitled to enhanced disability retirement. Instead, under the Commission's final decision, appellant is merely entitled to receive the ordinary pension he has earned by virtue of his service on the bench. The Commission's final decision is the subject of a separate appeal presently pending in this court in Case No. 18326.

sion, or whether [appellant] should be retired as permanently disabled with an enhanced disability pension immediately payable notwithstanding that he has not yet reached the standard retirement age of sixty years.''

Thereafter, on April 22, 1987, appellant filed a petition for a writ of mandamus in the First Judicial District Court, seeking to compel the Governor to appoint a three-physician medical panel in accordance with NRS 3.092(3). The Governor, represented by the Office of the Attorney General of the State of Nevada, filed an answer in opposition to the petition, and the district court conducted a hearing on the matter on May 5, 1987. Appellant testified at the hearing that, when he submitted his letter to the Governor, he was unaware of any Commission proceedings pending against him, and that his initial notice of intention to retire of October 30, 1986, was entirely "voluntary." Additionally, the district court determined at that hearing that it could appropriately consider, as relevant evidence in the case, this court's administrative order of October 19, 1986, and the Commission's order of April 16, 1987.

On May 14, 1987, the district court entered written findings of fact, conclusions of law and an order denying the petition. In its order, the court concluded:

1. The constitution of this state vested jurisdiction and authority in the Commission to consider and decide the issues of appellant's alleged judicial misconduct and his claim for retirement due to disability;

2. The Commission's jurisdiction and authority over appellant "were established in a lawful manner" and the Commission continued to exercise jurisdiction over appellant;

3. The Commission's jurisdiction and authority derived directly from the constitution and, therefore, the constitution being the supreme law of the state, any statutory proceedings, such as those authorized by NRS 3.092, must yield to the superior authority of the Commission;

4. The district court lacked jurisdiction "to order the [Governor] to comply with the terms of NRS 3.092 and appoint a physician's panel to consider [appellant's ] allegation of permanent disability for purposes of retirement from the bench, after proceedings have commenced before the Commission on Judicial Discipline and where the same question is at issue there;" and

5. "No incumbent judge may use NRS 3.092 to 'short-circuit' the constitutionally mandated process for investigating, hearing and deciding charges of judicial misconduct," and once begun, the Commission proceedings "must be allowed to reach their ultimate conclusion."

Accordingly, the district court found that the Governor had shown "good cause" for refusing to act in accordance with the provisions of NRS 3.092(3), and the court denied the petition. This appeal followed. Appellant raises numerous assignments of error on appeal, relating to the alleged voluntariness and the legal effect of his October 30, 1986, notice to the Governor of his intention to retire on an enhanced disability pension pursuant to NRS 3.092(3).

## DISCUSSION

Appellant first contends that because he allegedly tendered his claim for enhanced disability retirement to the Governor voluntarily and with no knowledge of any pending Commission proceedings against him, the extraordinary writ of mandamus was an available remedy in this case and that, therefore, the district court erred in concluding that it lacked jurisdiction to order the Governor to act in accordance with NRS 3.092(3). Specifically, appellant argues, NRS 3.092(3) expressly provides that, upon notification of a judge's desire "to retire voluntarily" as permanently disabled, the Governor "shall" appoint three physicians to examine the judge and report their findings. Consequently, appellant maintains, the Governor's duties under NRS 3.092(3) "are mandatory and admit of no discretion," and where, as here, the duties to be performed are "purely ministerial," mandamus is both available and appropriate to compel the Governor to act. *See* State Bar of Nevada v. List, 97 Nev. 367, 632 P.2d 341 (1981) (mandamus is available to compel the Governor's performance of an act that the law especially enjoins as a duty resulting from an office); *see also* NRS 34.160.

As the Governor points out, however, appellant's contention fails to acknowledge an essential fact upon which the district court's conclusions in this case are ultimately based. Specifically, it is unconstested that appellant waited approximately six months after notifying the Governor of his claim for enhanced permanent disability retirement before petitioning the district court for extraordinary relief, and, in that interim period, the Commission instituted judicial discipline proceedings pursuant to its constitutional mandate. In those proceedings, the Commission expressly assumed jurisdiction over the question of appellant's entitlement to enhanced permanent disability retirement. Thus, the Governor argues, neither appellant's alleged lack of knowledge in October 1986 of pending or impending Commission proceedings, nor the alleged voluntariness of appellant's notice of intention to retire at that time, is particularly relevant or critical to the district court's denial of appellant's petition. Rather, the Governor asserts, the

district court simply concluded that it lacked jurisdiction to compel him to appoint a physicians' panel to consider appellant's allegation of permanent disability for purposes of retirement from the bench *after* the Commission had clearly exercised its constitutional authority to determine precisely the same issue. We agree, and our review of the record reveals that the court's conclusions in this respect are well-supported by the evidence and by relevant, well-reasoned legal authority.

In particular, we note that the district court appropriately relied on the Commission's order of April 16, 1987, as clearly establishing that the Commission had expressly assumed jurisdiction over issues relating to appellant's entitlement to permanent disability retirement six days prior to the date appellant filed his petition in the district court. Further, as noted above, clear and unequivocal language in the constitution of this state specifically confers jurisdiction on the Commission to resolve such matters. Thus, the district court correctly determined that the Commission's authority to determine appellant's entitlement to disability retirement derives directly from the constitution. *See* Nev. Const. art. 6, § 21(1); (6) and (7). Additionally, the district court's conclusion that the applicable provisions of the constitution constitute the supreme law of the state and control over any conflicting statutory provisions cannot be subject to any serious dispute. *See, e.g.,* Robison v. District Court, 73 Nev. 169, 313 P.2d 436 (1957) (provision in constitution respecting impeachment of state officer controls over conflicting legislative enactment providing statutory scheme for removal); *see also* Wren v. Dixon, 40 Nev. 170, 187, 161 P. 722, 726 (1916), *citing* Oakland Paving Co. v. Hilton, 11 P. 3 (Cal. 1886) (constitution is law absolutely controlling the legislature, executive, and judicial departments and its provisions "take effect on laws already passed as well as to those to be enacted in the future"); State v. Duffy, 6 Nev. 138 (1870) (provisions of state constitution constitute supreme law of the state and must be enforced by the courts in letter and spirit).

In *Robison,* this court also stated the "well recognized rule that an express constitutional provision requiring a certain thing to be done in a certain way is exclusive to like extent as if it had included a negative provision to the effect that it may not be done in any other way." *Robison,* 73 Nev. at 175, 313 P.2d at 440. To whatever extent appellant's contentions focus upon any obligations imposed upon the Governor by the legislature which may conflict with the obligations imposed upon the Commission by the constitution, this court's holding in *Robison* clearly establishes the preeminence of the Commission's constitutional authority.

Moreover, although appellant correctly observes that the remedy of mandamus is available to compel performance of an act that the law especially enjoins as a duly resulting from an office, the extraordinary remedy of mandamus is neither available nor appropriate where an otherwise speedy and adequate remedy exists in the ordinary course of law. *See* NRS 34.170. As the Governor observes, appellant failed to establish below that the Commission's assumption of jurisdiction over the question of appellant's entitlement to enhanced disability retirement, combined with appellant's right to appeal any adverse decision of the Commission to this court, would deprive appellant of an adequate remedy to vindicate any prejudicial error that might occur in the Commission proceedings. Further, and in contrast to the statutory procedures set forth in NRS 3.092(3), the Commission proceedings allow for the creation of a full and complete record for purposes of this court's review. *See generally,* Hardin v. Griffin, 98 Nev. 302, 646 P.2d 1216 (1982) (supreme court's intervention in criminal proceedings by way of mandamus was unwarranted where right to appeal provided a plain, speedy and adequate remedy for any prejudicial error at trial, and proceedings below would provide a complete record for purposes of review); *see also* Nev. Const. art. 6, § 21(1) (providing right to appeal adverse decision of the Commission to the supreme court). Thus, although mandamus may have been available to compel the Governor to act in the absence of any pending Commission proceedings, once the Commission exercised its constitutional authority and jurisdiction, the remedy of mandamus was foreclosed and appellant could not utilize NRS 3.092(3) as a means of escaping the Commission's disciplinary authority. *See also* Powers v. Bd. of Control of Jud. Ret. Fund, 434 So.2d 745 (Ala. 1983); In re Peoples, 250 S.E.2d 890 (N.C. 1978), *cert. denied,* 442 U.S. 929 (1979). Under these circumstances, therefore, we reject appellant's contention that the district court erroneously determined that it lacked jurisdiction to issue the requested writ.

Appellant also attempts to distinguish the two major cases upon which the district court relied in formulating its decision. *See* Powers v. Bd. of Control of Jud. Ret. Fund, 434 So.2d 745 (Ala. 1983); In re Peoples, 250 S.E.2d 890 (N.C. 1978), *cert. denied.* 442 U.S. 929 (1979). Based upon the holdings in *Powers* and *Peoples,* the court below concluded that no judge who is the subject of disciplinary proceedings before the Commission may be permitted to "short-circuit" that process by attempting to resign his position. In contrast to the situation in the instant case, appellant maintains, the judges seeking to assert their rights to voluntary retirement in *Powers* and *Peoples* were formally noti-

fied of investigations and disciplinary proceedings against them prior to the date they attempted to retire. Thus, appellant asserts, the district court inappropriately applied the holdings of *Powers* and *Peoples* to the facts of this case because, unlike appellant, Judge Powers and Judge Peoples truly did not attempt to retire voluntarily.

In *Powers*, Judge Powers filed a written declaration with the Chief Justice of the Alabama Supreme Court, in accordance with the applicable Alabama statutory retirement provisions, declaring his intention to retire voluntarily on permanent disability status. *Powers*, 434 So.2d at 746. As appellant correctly notes, Judge Powers had previously been informed that he was the subject of an investigation before a commission of judicial inquiry. However, during the pendency of Powers's declaration of intention to retire voluntarily under the statutory scheme, the Alabama Judicial Inquiry Commission filed a formal complaint against Powers with the Court of the Judiciary (C.O.J.). Like Nevada's Commission on Judicial Discipline, the Alabama C.O.J. is empowered by the state constitution "to retire a judge who is physically or mentally unable to perform his duties." *Id.* at 749 (citing "Ala. Const. 1901, amend. 328, § 6.18(a)"). In addressing Powers's contention that he was nonetheless entitled to seek disability retirement under the Alabama statutory scheme, the Alabama court held that, although Powers could elect to seek retirement under the statutory provisions, "the filing of the complaint with the C.O.J. precluded Powers from utilizing that means." *Id.* The court explained:

> If that were not the case, the jurisdiction of the C.O.J. could be ousted by a judge seeking to use [the statutory retirement provisions] as a way of escaping a disciplinary proceeding. Analogously, the Supreme Court of North Carolina held that the jurisdiction of a commission vested with the authority to investigate and commence a disciplinary proceeding against a judge is not ousted by the judge's election to resign *where the election is made before charges are filed, but becomes effective after their filing. In re Peoples,* 296 N.C. 109, 250 S.E.2d 890 (1978). *Here, although Powers sought voluntary retirement [in a proceeding under the pertinent statute], that proceeding did not conclude before the J.I.C. filed its complaint with the C.O.J. The C.O.J., therefore, assumed jurisdiction over the retirement issue.* The Chief Justice, therefore, could look to the judgment of the C.O.J., which did not retire Powers, and decline to find and certify that Powers met the conditions prerequisite to retirement.

*Id.* at 749 (emphasis added).

Thus, as the court below correctly determined, the analogous

facts and the precise holding of the *Powers* decision constitute well-reasoned and relevant legal authority. Clearly, under the rationale of the *Powers* decision, the Nevada Judicial Discipline Commission's express assumption of jurisdiction over the question of appellant's entitlement to enhanced disability retirement on April 16, 1987, precluded the availability of a writ of mandamus compelling the Governor to act in accordance with NRS 3.092(3).

Similarly, in *Peoples,* the Supreme Court of North Carolina concluded that a judge's resignation, tendered to and accepted by the Governor after the judge was notified that a preliminary investigation of alleged misconduct in office had been initiated against him by the North Carolina Judicial Standards Commission, did not oust that Commission of its jurisdiction over the judge, nor did it render the Commission's subsequent proceedings moot. *Peoples,* 250 S.E.2d at 911. In the *Peoples* case, the resignation "accepted" by the Governor did not actually become effective until two days *after* the Judicial Standards Commission notified Judge Peoples that *formal* proceedings had been instituted against him. Under those circumstances, the North Carolina court concluded:

> [W]e are constrained to add that it would indeed be a travesty if a judge could avoid the full consequences of his misconduct by resigning from office after removal proceedings had been brought against him. According to this argument, it would be possible for an involved judge, *at any time before the Commission files its findings and recommendations with the Supreme Court, to bring the proceedings against him to a premature close by submitting his resignation to the Governor,* who would accept it without knowledge that charges were pending against the judge. We are entirely convinced that the legislature never intended any such result, and that to interpret [the statute] according to Respondent's contentions would emasculate the statute and thwart the legislative intent entirely.

*Id.* at 914 (emphasis added).

Appellant correctly observes that the court in *Peoples* also expressly concluded that it "need not decide what result would have been reached had the complaint [of the Judicial Standards Commission] been filed after the effective date of Judge Peoples's resignation." *Id.* at 910. Nonetheless, as in *Peoples,* appellant did not succeed in resigning his office prior to the date that the Commission expressly assumed jurisdiction in the matter. Because the Governor never appointed a three-physician panel pursuant to NRS 3.092(3), appellant never formally or effectively succeeded in resigning his office pursuant to that provision. We

conclude, therefore, that the analogous facts and the precise holding of *Peoples* are directly relevant to the instant case.

The holdings in *Powers* and *Peoples* not only provide compelling support for the legal conclusions of the court below, but, in our view, the sound logic and practical wisdom of those decisions are readily apparent when tested against the facts of this case. For instance, by supporting the proposition that the Commission—the constitutional body—is the proper entity exclusively empowered to act in the first instance, whenever issues of possibile misconduct are presented along with issues of disability in a given case, the decisions advance the eminently reasonable and practical result of allowing a single coherent resolution of all concerns to be achieved in one constitutionally sanctioned proceeding where all relevant evidence can be adduced. Accordingly, we reject appellant's contention that the district court inappropriately relied upon distinguishable and inapplicable legal authority.

Appellant further attempts to distinguish the holdings of *Powers* and *Peoples* on the basis of an official opinion of the attorney general addressing disciplinary proceedings instituted by the Commission against a justice of the peace or municipal court judge pursuant to NRS 1.440. *See* Op. Att'y Gen. No. 81-4 (March 3, 1981). In such a case, the attorney general opined, the only sanction available to the Commission under Nev. Const. art. 6, § 21 and art. 7, § 4 would be removal of the justice or judge from office. Therefore, the attorney general reasoned that such Commission proceedings would be rendered moot if the justice of the peace or municipal judge resigned his office.

We note, however, that the Governor and his counsel concede that the official opinion in question did not appropriately take into account the well-reasoned decisions in *Powers* and *Peoples*. In fact, as the Governor notes, the March 3, 1981, opinion of the attorney general was issued prior to the Alabama Supreme Court's 1983 decision in *Powers*. Moreover, the opinion of the attorney general is confined to Commission proceedings, instituted pursuant to NRS 1.440, specifically against justices of the peace and municipal court judges. Consequently, the opinion has little relevance to the Commission's express constitutional authority respecting district judges. Nor is that opinion relevant to the question of the Commission's superior authority to resolve issues respecting a district judge's entitlement to early disability retirement. At the time the opinion was published, the legislature had not yet enacted any legislation providing early disability retirement for district judges. The 1981 opinion of the attorney general, therefore, can hardly provide support for appellant's interpretation of NRS 3.092(3), which had not even been enacted at the time the opinion was issued. Under these circumstances, the attorney general's opinion is neither particularly persuasive

nor relevant authority. In any event, opinions of the attorney general do not constitute binding legal authority or precedent. *See* Cannon v. Taylor, 88 Nev. 89, 493 P.2d 1313 (1972).

Next, appellant complains that the district court erred in determining that the issues before it were essentially legal rather then factual, and in failing to resolve the disputed factual question of the "voluntariness" of appellant's notice of intention to retire. *See, e.g.,* NRS 34.220 (court may in its discretion order a question of fact, which is essential to the court's determination, to be tried before a jury). Appellant argues that because that factual issue was essential to the proper disposition of the petition, the district court committed "clear error" by not requiring the Governor to submit "otherwise admissible evidence and . . . proof sufficient to establish the evidentiary basis for the defense offered—that Judge Goldman's request for leave and his subsequent request to retire was not voluntary." Appellant also asserts that the district court "apparently" reasoned that because appellant was aware of this court's administrative order of October 19, 1986, appellant's "request for retirement was not voluntary under NRS 3.092(3) since the Order portended 'pending or impending' disciplinary actions by . . . the Commission." Appellant maintains that such a "linkage" is unwarranted and further states:

> In declining to direct the Governor to act, the District Judge seized upon an Order of the Nevada Supreme Court . . . and without hearing and in fact declining to receive evidence, inferred the intentions of this Court in issuing its order and imputed motives to Judge Goldman in offering his retirement letter without receiving or considering any evidence pertinent to the issue.

Similarly, appellant contends the district court erroneously determined, without receiving evidence, that by participating in the proceedings before the Commission, appellant waived his right to have the Governor act in accordance with NRS 3.092(3). Appellant states that "[i]t was essential to the District Judge's decision that he found that Judge Goldman waived his right by participating in the [Commission] process which took place only because the Governor waited so long to act."

Appellant's contentions, however, misconstrue the findings and conclusions of the court below. As the Governor observes, the district judge specifically and correctly noted that it was not essential to his decision to resolve such issues. A review of the transcript of the hearing below, as well as the lower court's written findings and conclusions, clearly reveals that the district

judge simply did not "reason," based upon the entry of this court's administrative order, that appellant's attempt to retire was not voluntary. Nor did the district judge "find" that appellant waived any of his rights under NRS 3.092(3) by participating in the Commission hearing of March 30, 1987.

In any event, specific resolution of these issues was not "essential" to the district court's final decision. As discussed above, at the very latest, the Commission had expressly assumed jurisdiction over the question of appellant's entitlement to enhanced disability retirement on April 16, 1987. Therefore, the Commission's express assertion of its primary constitutional jurisdiction, prior to the date appellant filed his petition below, was completely dispositive of the issues presented by appellant's petition for extraordinary relief. Accordingly, we perceive no error relating to the district court's failure to reach or specifically resolve these questions.

Finally, appellant asserts that the district court erred in denying his petition because, under Rule 24(b) of the Revised Interim Procedural Rules of the Nevada Commission on Judicial Discipline,[5] appellant's letter to the Governor constituted a voluntary retirement "as a matter of law." Rule 24 provides:

(a) The commission may retire a judge:
(1) For advanced age which interferes with the proper performance of his judicial duties; or
(2) For mental or physical disability which prevents the proper performance of his judicial duties and which is likely to be permanent in nature.
(b) A respondent retired by, or who retires during the pendency of a hearing before, the commission shall be considered to have retired voluntarily.

Appellant specifically contends that, under Rule 24(b), "[t]his court itself has determined the effect of any retirement of a Judge under a cloud of investigation." Thus, appellant maintains, his attempt to retire on enhanced disability status pursuant to NRS 3.092(3) was "voluntary as a matter of law." Again, we disagree.

Rule 24 was adopted and became effective by order of this court entered January 10, 1978, and, at that time, the legislature had not yet enacted any provision entitling a district judge to

---

[5]The Commission proceedings involving appellant were conducted in accordance with the Revised Interim Procedural Rules adopted by this court on January 10, 1978. *See* Nev. Const. Art. 3, § 1 and Art. 6, § 21(5). Subsequently, the court adopted new procedural rules, which became effective on April 29, 1988. *See* Supreme Court Rules, Part VI, Administrative and Procedural Rules for The Nevada Commission on Judicial Discipline.

early, enhanced disability retirement. NRS 3.092(3), the provision through which appellant sought enhanced disability retirement, was not enacted by the legislature and did not become effective until 1985. Thus, at the time Rule 24 was promulgated and formally adopted by this court, NRS 3.092(3) was not even in existence. As a consequence, the *only* type of retirement contemplated by Rule 24, *i.e.*, the *only* type of retirement available to a district judge at the time that rule was promulgated, was the normal retirement that a district judge earns and is ordinarily entitled to receive. *See* NRS 3.090.

Appellant, however, has never attempted merely to retire unconditionally in the routine manner contemplated by Rule 24(b) and NRS 3.090. Quite to the contrary, he sought to retire only if a medical panel diagnosed him as permanently disabled, and thus entitled to an enhanced disability pension, beyond the ordinary pension which the discipline commission ultimately found to be his sole entitlement. In his letter to the Governor, and in the proceedings below, appellant alleged that he was entitled to a type of early, enhanced, permanent disability retirement that was manifestly not embraced by the Commission rules promulgated by this court in 1978, and that would be vastly more advantageous to appellant financially than the normal retirement that he has unquestionably earned.

Moreover, as with any rule or statute, the various parts of Rule 24 should be read and interpreted in light of all the procedures set forth in the Revised Interim Rules and the purpose of those procedures. *See generally,* Colello v. Administrator, Real Est. Div., 100 Nev. 344, 683 P.2d 15 (1984) (courts may determine legislative intent by looking to the entire act and construing the statute in light of purposes underlying the act). When read together with all the procedures and interpreted in light of the purposes of those procedures, it is clear that Rule 24 was only intended to apply to Commission proceedings concerned with the *sole* question of whether a judge's *retirement* was warranted by advanced age, or mental or physical disability interfering with the proper performance of the judge's duties. In such a proceeding, and in that limited context, the retirement of the judge, whether by the Commission or by the judge himself, would be deemed "voluntary" under Rule 24(b). Nothing in the Revised Interim Rules applicable to appellant's case, however, suggests that the denomination of such retirement as "voluntary" in that limited context could deprive the Commission of its jurisdiction in an entirely different proceeding and context wherein a judge accused of serious judicial misconduct interposes a defense collaterally implicating his entitlement to early disability retirement. The use

of the term "voluntary" in Rule 24(b), therefore, cannot by any reasonable implication allow a judge to escape the consequences of Commission proceedings primarily concerned with allegations of judicial misconduct. Under these circumstances, Rule 24 simply cannot be read to support appellant's contention that the Governor *must* proceed in accordance with NRS 3.092(3), where a judge has notified the Governor of his intention to retire on an enhanced disability pension under that statute, and where the judge's right to that disability status is implicated in pending proceedings before the Commission on Judicial Discipline primarily concerned with allegations of judicial misconduct. We conclude, therefore, that appellant's contention is without merit.

## CONCLUSION

Appellant has failed to establish that the district court committed reversible error or otherwise abused its discretion in declining to issue a writ of mandamus compelling the Governor to act in accordance with NRS 3.092(3), after constitutionally authorized proceedings had commenced before the Nevada Commission on Judicial Discipline. Accordingly, we affirm the decision of the district court in all respects.

YOUNG, C. J., STEFFEN, J., and ZENOFF, SR. J.[6]

---

[6]Pursuant to orders of this court entered September 14, 1988, and November 30, 1988, Senior Justice DAVID ZENOFF participated in this appeal in the place of then Chief Justice E. M. GUNDERSON. Additionally, pursuant to this court's order of November 30, 1988, replacement district judges were not appointed to sit in the stead of Justice SPRINGER and Justice MOWBRAY, who had earlier disqualified themselves.